MD JS-6

1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                        CENTRAL DISTRICT OF CALIFORNIA

10

11   In re                                No. CV 08–0093 (PA) √
                                          No. CV 08–1478 (PA)
12   CONTINENTAL COIN                     No. CV 08–2504 (PA)
     CORPORATION,
13                                        Bankruptcy Court Case No.
                  Debtor.                 1:00-bk-15821-GM
14   _____  OPINION AFFIRMING BANKRUPTCY
15   NANCY HOFFMEIER ZAMORA,              COURT ORDERS
     CHAPTER 11 TRUSTEE,
16
                  Appellant,
17
          v.
18
     ROGER VIRTUE,
19
                  Appellee.
20

21

22

23          Before the Court are appeals and a cross-appeal from Orders entered by the United

24   States Bankruptcy Court for the Central District of California ("bankruptcy court") on

25   December 12, 2007 and January 31, 2008.  Chapter 11 Trustee Nancy Hoffmeier Zamora

26   ("Trustee") and creditor Roger Virtue ("Virtue") filed these appeals in three cases (Case

27   Nos. CV 08–0093; 08–1478; 08–2504).  Because all three appeals seek review of the same

28   two Bankruptcy Orders, the Court consolidated them under Case No. 08–0093.  (See Nov. 7,

2008 Order.)  Pursuant to Federal Rule of Civil Procedure 78, Local Rule 7-15, and Federal Rule of Bankruptcy Procedure 8012, the Court finds that this matter is appropriate for decision without oral argument.

## I.      FACTUAL & PROCEDURAL BACKGROUND

On July 19, 2000, Continental Coin Corporation ("Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code.  (Excerpts of Record ("ER") 46–47.)  The Debtor owned and operated a retail store ("Retail Store") that sold precious gems, jewelry, numismatic coins, gold bullion, precious metals and collectibles, and exchanged foreign currency.  It also owned a mint facility ("Mint") that made decorative and commemorative coins, refined precious metals, and subleased office and retail space to approximately eighteen subtenants.[1]/

On August 31, 2001, the Trustee was appointed.   (ER 632–42.)  The Trustee commenced selling the estate's assets and satisfying claims.  She sold the Ground Leases and the Mint equipment on May 11, 2004.  (ER 1122–24.)

Virtue is one of the Debtor's creditors.  (ER 2237.)  He contends that the Trustee improperly liquidated the estate.  On July 31, 2007, Virtue filed a motion for leave to sue the Trustee and her counsel (ER 2208–2387).  Virtue alleged that the Trustee failed to:  (1) give notice of her intent to assume the leases for the Mint and Retail facilities (ER 2392); (2) hire brokers to assist with the sale or valuation of the leases, equipment, machinery and personal property (ER 2394); (3); accept reasonable offers for the leases and property, thus causing a significant loss for the estate (ER 2394–2401); and (4) respond to Virtue's requests for information (ER 2401–2402).  Virtue sought recovery from the Trustee and her counsel based on the legal theories of breach of fiduciary duty, gross negligence, negligence, and legal malpractice.  (ER 2402–2406.)

_____

[1]/      The Debtor owned the leases for the Retail Store, Mint, and office space ("Ground Leases").  (ER 797–821, 853–865, 1976, 2033.)

1    On December 12, 2007, the bankruptcy court held that the Trustee was entitled to

2    quasi-judicial immunity for negligence, but that Virtue could pursue his claims against the

3    Trustee for gross negligence and for breach of fiduciary duty.[2/]  (ER 2753.)

4        On December 21, 2007, the Trustee appealed. (ER 2767–2773.)  On the same day,

5    Virtue filed a motion to modify the order.  He sought a determination that the Trustee could

6    be held liable for the negligent violation of her statutory duties and that he could sue the

7    Trustee's counsel. (ER 2774–2836.)  On December 28, 2007, Virtue filed his complaint

8    against the Trustee and her counsel.[3/]  (ER 2837–2860.)  On January 8, 2008, the Trustee

9    filed a motion to stay the December 12, 2007 Order and the adversary proceeding.  (ER

10   2933–2942.)  On January 31, 2008, the bankruptcy court denied Virtue's motion and granted

11   the Trustee's motion for a stay.[4/]  (ER 3056–3066.)

12   **II.    STANDARD OF REVIEW**

13       The bankruptcy court's findings of fact are reviewed for clear error, and conclusions

14   of law are reviewed de novo.  Sousa v. Miguel (In re U.S. Trustee), 32 F.3d 1370, 1372 (9th

15   Cir. 1994); Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.), 912 F.2d 1162,

---

17   [2/]    It prohibited Virtue from filing a complaint alleging self-dealing or breaches of the
18   duty of loyalty, as no such allegations had been brought in the proposed complaint lodged
     with the motion.  (ER 2753.)  It also prohibited Virtue from pursuing claims related to the
19   Trustee's failure to move to set aside the assumption of the Ground Leases or failure to hire
     a real estate broker, both of which the bankruptcy court found to fall under the "business
20   judgment rule."  (ER 2753.)  Additionally, the bankruptcy court held that Virtue could not
     sue the Trustee's attorneys because her attorneys owe no statutory or fiduciary duty to the
21   creditors of the estate, and Virtue lacked standing to assert a malpractice claim.  (ER 2751.)
     Finally, the bankruptcy court held that Virtue could not hire his own attorneys to represent
22   the estate in a suit against the Trustee, and that he was not entitled to prior approval of an
23   administrative expense to pay his attorneys out of the estate.  (ER 2752.)

24   [3/]    The bankruptcy court construed Virtue's motion to modify as a motion for
25   reconsideration.

26   [4/]    The court also denied Virtue's request to conduct discovery and to require the Trustee
     and her counsel to post a bond as a condition of the stay.  (ER 3056–3066.)  On February 5,
27   2008, Virtue filed his notice of appeal of both the December 12, 2007 and January 31, 2008
     Orders.  On February 8, 2008, the Trustee filed an amended notice of appeal and notice of
28   cross-appeal.  (ER 3068–3116.)

1   1166 (9th Cir. 1990); Fed. R. Bankr. Proc. 8013; see also Curry v. Castillo (In re Castillo),

2   297 F.3d 940, 946 (9th Cir. 2002) ("The bankruptcy court's conclusions of law regarding the

3   immunity of . . . a trustee are reviewed de novo, while findings of fact are reviewed for clear

4   error."). Bankruptcy court's rulings on motions to stay or motions to require posting of a

5   bond are reviewed for abuse of discretion.  In re Irwin, 338 B.R. 839, 844 (E.D. Cal. 2006)

6   (stay reviewed for abuse of discretion); In re Swift Aire Lines, Inc., 21 B.R. 12, 14–16 (9th

7   Cir. BAP 1982) (requiring bond is discretionary).

8   **III.    ANALYSIS**

9       A.    Quasi-Judicial Immunity

10      The Trustee argues that she is entitled to absolute quasi-judicial immunity for any

11  claim based on her decisions of how and when to sell the estate's assets.  The bankruptcy

12  court held that the Trustee was entitled to quasi-judicial immunity for negligence, but that

13  immunity did not extend to grossly negligent or willful conduct.

14      Judicial immunity insulates judges from suit for adjudicative acts.  Forrester v. White,

15  484 U.S. 219, 225–28, 108 S. Ct. 538, 543–545, 98 L. Ed. 2d 555 (1988).  This immunity "is

16  not reserved solely for judges, but extends to nonjudicial officers for 'all claims relating to

17  the exercise of judicial functions[,]'" through the doctrine of quasi-judicial immunity.

18  Castillo, 297 F.3d at 947 (quoting Burns v. Reed, 500 U.S. 478, 499, 111 S. Ct. 1934, 114 L.

19  Ed. 2d 547 (1991) (Scalia, J., concurring in part and dissenting in part)).  In Antoine v.

20  Byers & Anderson, Inc., 508 U.S. 429, 113 S. Ct. 2167, 124 L. Ed. 2d 391 (1993), the

21  United States Supreme Court established a two-part test for determining if a non-judicial

22  officer is entitled to quasi-judicial immunity.  First, a court must undertake "a considered

23  inquiry into the immunity historically accorded the relevant official at common law and the

24  interest behind it." Id. at 432, 113 S. Ct. at 2170.  Second, a court must consider whether a

25  judge, if performing the particular action at issue, would be entitled to absolute immunity.

26  Id. at 435, 113 S. Ct. at 2171.  Under the second prong, "the touchstone for the doctrine's

27  applicability has been performance of the function of resolving disputes between parties, or

28  of authoritatively adjudicating private rights."  Id. at 435–36, 113 S. Ct. at 2171 (internal

-4-

1  quotations and citations omitted).  Thus, "[w]hen judicial immunity is extended to officials

2  other than judges, it is because their judgments are functionally comparable to those of

3  judges — that is, because they, too, exercise a discretionary judgment as part of their

4  function."  Id. at 436, 113 S. Ct. at 2171 (internal quotations and citations omitted).

5          Accordingly, here the Court:

> must first inquire as to the immunity historically accorded a
> bankruptcy trustee at common law, during the development of
> the common-law doctrine of judicial immunity.  We next
> consider whether the particular functions of the bankruptcy
> trustee at issue in this case . . . are functions involving the
> exercise of discretionary judgment.

10  Castillo, 297 F.3d at 949.  The bankruptcy court characterized this test as requiring "the

11  court to first look at the position at issue . . . to see if it is one whose functions were

12  historically judicial in nature, and therefore was afforded immunity, and only then to

13  determine if the particular action being taken by the individual in that position was an

14  adjudicative function (first categorize the actor and then look at the nature of the action)."

15  (ER 2742.)  In applying this test, the bankruptcy court determined that the Trustee could

16  invoke quasi-judicial immunity, and that such immunity extended to the actions taken here.

17  It then analyzed the reach of quasi-judicial immunity, and determined that it extended to

18  negligent, but not grossly negligent or willful, actions.  This Court agrees.

19          1.      Trustees May Invoke Quasi-Judicial Immunity

20          Under the first Antoine prong, the Court must determine whether bankruptcy trustee

21  antecedents were historically accorded immunity.  Antoine, 508 U.S. at 432, 113 S. Ct. at

22  2170; Castillo, 297 F.3d at 949.  This appears akin to a standing inquiry.  In other words, the

23  Court must determine through a historical inquiry whether a trustee has standing to assert a

24  quasi-judicial immunity defense.  The Ninth Circuit has answered this question in the

25  affirmative:

> Thus the common-law and nineteenth century antecedents of the
> modern bankruptcy trustee were entrusted with both
> administrative and adjudicatory functions.  To the extent the
> trustee performed the functions of a modern-day bankruptcy

-5-

judge, immunity would have extended to the performance of
these common-law adjudicatory functions.

Castillo, 297 F.3d at 950; see also id. ("Once appointed, the standing trustee — operating under the supervision of the U.S. Trustee and pursuant to legislative and judicial directives — performs a wide variety of functions previously performed by bankruptcy judges.").  In Castillo, the Ninth Circuit held that a trustee was entitled to quasi-judicial immunity for miscalendaring, and failing to give notice of, a hearing.  Castillo, 297 F.3d at 953.  Here, the Trustee may assert a quasi-judicial immunity defense.  The Court must next inquire if such immunity encompasses the Trustee's sale of the estate's assets.

> 2.    Quasi-Judicial Immunity Extends to the Trustees' Selling of the Estate Assets

In Castillo, the Ninth Circuit noted that it did "not hold that all of the Trustee's many functions are covered by absolute quasi-judicial immunity."  Castillo, 297 F.3d at 957.  Quasi-judicial immunity extends to trustee's actions only if they "are functionally comparable to those of judges — that is, because they, too, exercise a discretionary judgment as part of their function."  Antoine, 508 U.S. at 436, 113 S. Ct. at 2171.  Immunity covers only the actions of "resolving disputes between parties, or of authoritatively adjudicating private rights."  Id.

Virtue argues that quasi-judicial immunity does not apply to the actions of selling estate assets because those actions are administrative, and not adjudicatory, in nature.  (Virtue Br. 16–19.)  In support of this assertion, he contends that these actions were historically performed by "assignees[,]" and not the antecedents of modern bankruptcy judges.  (Id.)  Virtue conflates the first Antoine prong with the second.  While determining who historically performed certain functions is relevant for ascertaining if a trustee falls into a class of persons who may assert immunity, it is not clear that the historical analysis is relevant to determining if a given action is adjudicatory in nature.  In Antoine, the Supreme Court emphasized that immunity extends to actions that are "functionally comparable" to those performed by judges.  Antoine, 508 U.S. at 436, 113 S. Ct. at 2171.  An action is

1   "functionally comparable" if it involves the exercise of discretionary judgment. <u>Id.</u>  If, as

2   Virtue appears to suggest, the test was merely whether a judicial officer historically

3   performed the function at issue, there would be no need to determine if the action was

4   "functionally comparable" to that historically performed by judges.  In other words, under

5   Virtue's analysis, the action would qualify for immunity if a judge actually historically

6   performed it, not if it was merely comparable to an action that judges historically performed.

7   However, the Supreme Court noted that "some tasks performed by judges themselves, 'even

8   though they may be essential to the very functioning of the courts, have not . . . been

9   regarded as judicial acts[,]'" because they are not discretionary. <u>Id.</u> at 437, 113 S. Ct. at

10   2172 (quoting <u>Forrester</u>, 538 U.S. at 228, 108 S. Ct. at 544.).  Thus, the Supreme Court

11   emphasized that under the second prong, the nature of the action is relevant, not the identity

12   of the person who historically performed it.  Quasi-judicial immunity extends to a trustee's

13   liquidation of assets if doing so involves "resolving disputes between parties, or of

14   authoritatively adjudicating private rights." <u>Id.</u> at 435–36, 113 S. Ct. at 2171.

15         There can be no dispute that a trustee's evaluation and acceptance or rejection of

16   parties' offers  to purchase estate assets involves discretionary judgment.  Moreover, it

17   involves the authoritative adjudication of private rights. <u>See</u> <u>Harris v. Wittman</u>, No.

18   06cv1939, 2007 WL 2456202, at *10 (S.D. Cal. Aug. 21, 2007) (holding that "transferring

19   and selling assets of the Estate . . . are 'essential to the authoritative adjudication of private

20   rights to the bankruptcy estate.'" (quoting <u>Castillo</u>, 297 F.3d at 951)).  Even if historical

21   analysis is relevant under this prong, quasi-judicial immunity has been extended to actions

22   akin to evaluating and selling assets, even when such actions were not performed by judges.

23   <u>Antoine</u>, 508 U.S. at 433 n.8, 113 S. Ct. at 2170 n.8 (noting that quasi-judicial immunity

24   historically extended "'to assessors upon whom is imposed the duty of valuing property for

25   the purpose of a levy of taxes; to commissioners appointed to appraise damages when

26   property is taken under the right of eminent domain; . . . and to the collector of customs in

27   exercising his authority to sell perishable property, and in fixing upon the time for notice of

28   sale.'" (quoting T. Cooley, Law of Torts 410–11 (1880)).  Accordingly, like the bankruptcy

-7-

1  court, this Court concludes that quasi-judicial immunity extends to the Trustee's actions

2  here.

3          3.      Quasi-Judicial Immunity Extends Only to Negligent Wrongdoing

4          While quasi-judicial immunity extends to liquidating assets, it appears to do so only

5  when a trustee's actions involve no more than negligence.  Grossly negligent or willful

6  conduct is not entitled to protection.

7          In Mosser v. Darrow, 341 U.S. 267, 274–75, 71 S. Ct. 680, 683–84, 95 L. Ed. 927

8  (1951), the Supreme Court held that a reorganization trustee could be held personally liable

9  for willfully permitting his employees to trade in the debtor's subsidiaries' securities and to

10 retain the profits rather than transferring them to the estate.  Likewise, in Ferrante v. Nw.

11 Nat'l Ins. Co. (In re Ferrante), 51 F.3d 1473, 1475–76, 1480 (9th Cir. 1995), the Ninth

12 Circuit held that a trustee was personally liable for willfully retaining money from the sale

13 of cars owned by the debtor, rather than using it to pay secured creditors.

14         The Ninth Circuit has also held, or stated in dicta, that trustees may be liable for

15 breaching duties involving less than willfulness.  In Hall v. Perry (In re Cochise College

16 Park, Inc.), 703 F.2d 1339, 1345 (9th Cir. 1983), the Ninth Circuit considered a trustee who

17 had continued accepting payments from creditors on executory contracts that he had already

18 decided to reject.  The court held that the trustee's failure to take formal steps to reject the

19 executory contracts "and thereby permit the creditor to continue to perform after the date of

20 decision to reject directly and unnecessarily injures the creditor and is not consonant with

21 conduct of an ordinarily prudent person serving the capacity of trustee.  Such failure

22 therefore gives rise to a claim for damages for which the trustee is personally liable."  Id. at

23 1358 (footnote omitted).  The court also stated that "[a]lthough a trustee is not liable in any

24 manner for mistakes in judgment where discretion is allowed . . . he is subject to personal

25 liability for not only intentional but also negligent violations of duties imposed on him by

26 law[.]"  Id. at 1357 (citations omitted); see also id. at 1357 n.26 (stating that "[w]e reject the

27 approach of the Tenth and Sixth Circuits which, in an apparent misreading of the seminal

28 case of Mosser v. Darrow, . . . have concluded that a bankruptcy or reorganization trustee

-8-

1   may be held personally liable for damages only for injuries arising from intentional — as

2   opposed to negligent — conduct. . . . Properly construed, the language quoted from <u>Mosser</u>

3   indicates merely that the sort of personal liability which may be imposed on a trustee for the

4   acts of his employees is not strict liability but rather liability depending at least on a showing

5   of the trustee's own negligence; <u>Mosser</u> does not 'hold' in any sense that personal liability

6   does not obtain if such a showing of negligence is made.").

7       Likewise, in <u>United States v. Hemmen</u>, 51 F.3d 883, 885–886 (9th Cir. 1995), the

8   court considered the trustee's failure to pay a tax levy against the debtor out of his allowed

9   administrative expense claim.  The court rejected the trustee's claim for quasi-judicial

10   immunity because the trustee was aware of the levy, his failure to honor it did not arise from

11   his duty to protect the assets of the estate, and he did not raise before the bankruptcy court

12   the legal question of whether he was obligated to pay the levy.  <u>Id.</u> at 891.  The court stated

13   that "[t]rustees are not immune, however, for intentional or negligent violation of duties

14   imposed by law." <u>Id.</u> (quoting <u>Bennett v. Williams</u>, 892 F.2d 822, 823 (9th Cir. 1989).)  In

15   <u>Bennett</u>, the Ninth Circuit also stated that trustees are not immune for intentional or

16   negligent violations of duties, but held that the trustee was entitled to quasi-judicial

17   immunity for negligently hiring and supervising a management company when the

18   bankruptcy court had authorized the hiring and the creditor had constructive knowledge and

19   did not object.  <u>Bennett</u>, 892 F.2d at 823–25.

20       However, in <u>Castillo</u>, the court extended quasi-judicial immunity to a trustee that had

21   negligently miscalendared, and failed to give notice of, a hearing.  <u>Castillo</u>, 297 F.3d at 953.

22   The court concluded by noting that "[b]ecause we decide that Curry is entitled to immunity,

23   we need not reach Castillo's argument that bankruptcy trustees may be liable for

24   negligence."  <u>Id.</u>  Virtue argues that the court in <u>Castillo</u> never reached the issue of whether

25   quasi-judicial immunity extends to negligent actions.  (Virtue Br. 23.)  Virtue

26   misunderstands the holding in <u>Castillo</u>.  There, the court expressly considered the trustee's

27   negligent acts, and held that the trustee was entitled to quasi-judicial immunity for those

28   acts.  <u>Castillo</u>, 297 F.3d at 953.

1    Thus, the bankruptcy court was faced with seemingly conflicting Ninth Circuit

2    precedent. On the one hand, in <u>Cochise</u> and <u>Hemmen</u>, the court held that a trustee is not

3    immune for negligent acts. On the other hand, in <u>Bennett</u>, the court stated in dicta that

4    trustees are not immune for negligent acts, but then ultimately extended quasi-judicial

5    immunity to the trustee's alleged negligence. Similarly, in <u>Castillo</u>, the court extended

6    quasi-judicial immunity for negligent acts. To resolve this conflict, the bankruptcy court

7    examined the precise nature of the acts in question in each of these cases.

8        In <u>Cochise</u>, the trustee violated his obligation to inform creditors that he intended to

9    reject the executory contracts the creditors had with the debtor, thus allowing them to

10   continue to pay on the contracts. 703 F.2d at 1358. The court also noted that the trustee

11   "repeatedly told [creditors] that they had to continue making payments on the promissory

12   notes to protect their rights and threatened to foreclose on the mortgaged lots if payments

13   were not made[,]" and that he then used the money received to "pay costs of administering

14   the estate, including his own trustee's fee." <u>Id.</u> at 1345–46. The bankruptcy court correctly

15   concluded that the action at issue in <u>Cochise</u> involved more than mere negligence.

16       In <u>Hemmen</u>, the court rejected the trustee's claim for quasi-judicial immunity because

17   the trustee was aware of the tax levy, his failure to honor it did not arise from his duty to

18   protect the assets of the estate, and he did not raise the legal question of whether he was

19   obligated to pay the levy before the bankruptcy court. <u>Id.</u> at 891. Virtue argues that the

20   trustee was guilty of mere negligence in <u>Hemmen</u> because he could reasonably have thought

21   that he had a legal basis for failing to honor the levy. (Virtue Br. 22.) However, even if the

22   trustee there thought in good faith that he had a legitimate basis not the pay the levy, he

23   consciously chose both to ignore it, and to fail to inform the bankruptcy court about it. <u>Id.</u>

24       In contrast, the court in <u>Bennett</u> merely stated in dicta that a trustee may be held

25   liable for negligence, but actually extended quasi-judicial immunity to bar liability for the

26   allegedly negligent hiring and supervision of a management company. <u>Bennett</u>, 892 F.2d at

27   823. Similarly, the court in <u>Castillo</u> extended absolute quasi-judicial immunity to the

28   trustee's negligent miscalendaring, and failure to provide notice of, a hearing. <u>Castillo</u>, 297

-10-

1   F.3d at 953.  The acts of hiring and supervising a management company, and of

2   miscalendaring and failing to provide notice of a hearing, were not alleged to have been

3   taken in bad faith, and thus cannot be characterized as knowing breaches of duty, as the

4   actions in Cochise and Hemmen might be.  Thus, the bankruptcy court resolved the conflict

5   between Cochise, Hemmen, Bennett and Castillo by interpreting them to mean that quasi-

6   judicial immunity extends to mere negligent acts, but not to grossly negligent or willful

7   breaches of duty.  As the bankruptcy court noted, other courts have similarly held that

8   immunity extends to negligent, but not grossly negligent or willful actions.  See DiStefano v.

9   Stern (In re J.F.D. Enters., Inc.), 223 B.R. 610, 628 (Bankr. D. Mass. 1998) (noting that

10  gross negligence "strikes the proper balance between the difficulties of the task assumed by

11  trustees and the need to protect the interest of creditors and other parties to the bankruptcy

12  case.").  This Court agrees.

13         Virtue argues that, even if the Trustee can assert a quasi-judicial immunity

14  affirmative defense, that should not preclude him from filing suit.  (Virtue Br. 20–21.)

15  However, in its Confirmation Order, the bankruptcy court expressly required that Virtue

16  obtain leave before filing suit.  (ER 2197–2198.)  Virtue does not challenge the bankruptcy

17  court's authority to do this.  The applicability of the Trustee's quasi-judicial immunity

18  affirmative defense causes Virtue's negligence claims to fail as a matter of law.  The

19  bankruptcy court noted that allowing Virtue to pursue claims that are barred as a matter of

20  law "would be a waste of estate assets[.]"  (ER 2734.)  Accordingly, the bankruptcy court

21  did not abuse its discretion in prohibiting Virtue from filing those claims.

22         B.     Business Judgment Rule

23         The bankruptcy court held that "[t]he allegations which fall under the business

24  judgment rule and [sic] are not actionable.  They are not to be pursued in the complaint.  As

25  currently pleaded this would include the issues of failing to set aside the assumption of the

26  ground leases or to hire a real estate broker."  (ER 2753.)  The parties argue at length about

27  the application of the "business judgment rule."  In Bennett, the Ninth Circuit noted that it

28  has "consistently held that liability will not be imposed for mistakes in business judgment."

1   *Bennett*, 892 F.2d at 824 (citing *Southwestern Media Inc. v. Rau*, 708 F.2d 419 (9th Cir.

2   1983); *Cochise*, 703 F.2d at 1357). It further stated that it "is deferential to the business

3   decisions of a bankruptcy trustee and [has] held trustees immune from collateral attack for

4   acts of mismanagement when the trustee was acting within his court authorization." *Id.*

5   (citing *Lonneker Farms, Inc. v. Klobucher*, 804 F.2d 1096, 1097 (9th Cir. 1986);

6   *Southwestern*, 708 F.2d at 425). In *Cochise*, the court stated that "a trustee is not liable in

7   any manner for mistakes in business judgment where discretion is allowed[.]" *Cochise*, 703

8   F.2d at 1357.

9          Thus, the "business judgment rule" appears to offer a trustee immunity for her

10   business decisions made in the scope of her authority, and with court approval. It is unclear

11   what, if any, difference exists between the business judgment rule and quasi-judicial

12   immunity. Indeed, in both *Bennett* and *Lonneker*, the court discussed the business judgment

13   rule and then held that the trustee was entitled to quasi-judicial immunity. *Bennett*, 892 F.2d

14   at 825; *Lonneker*, 804 F.2d at 1097; *see also* *Southwestern*, 708 F.2d at 425 (holding that

15   "[t]he [trustee's] decision concerning the form of sale [of estate assets free and clear of lien]

16   therefore rested within the business judgment of the trustee. Liability will not be imposed

17   for the exercise of such judgment, absent negligence." (citations omitted)).

18          Virtue asserts that many of the Trustee's actions are so egregious that the business

19   judgment rule does not apply. However, Virtue provides no argument or evidence to

20   demonstrate that the specific actions here — the Trustee's failure to set aside the assumption

21   of the Ground Leases and to hire a real estate broker — fall outside the business judgment

22   rule. Accordingly, Virtue fails to demonstrate that the bankruptcy court erred in holding that

23   these claims are not actionable.

24         C.    The Bankruptcy Court Properly Allowed Virtue to File an Amended
25                 Complaint

26          The Trustee argues that the bankruptcy court erred as a matter of law by allowing

27   Virtue to file an amended complaint alleging gross negligence because doing so violated its

28   Confirmation Order. (Trustee's Br. 16–17.) The Trustee offers no legal authority for this

1    argument.  Moreover, even if a bankruptcy court could be held to have abused its discretion

2    for modifying its own order, the Trustee's argument is a non-sequitur.  The Confirmation

3    Order required that Virtue file a request for leave to sue the Trustee and the Trustee's

4    counsel no later than July 31, 2007.  (ER 2197–2198.)  Virtue filed his request for leave to

5    file a complaint by the deadline, and the bankruptcy court's decision to allow Virtue to file

6    an amended complaint does not contradict any part of the Confirmation Order.

7              D.    The Bankruptcy Court Properly Held That Virtue May Not Sue the Trustee's
                     Counsel

8

9         Virtue argues that he is entitled to sue the Trustee's counsel.  The bankruptcy court

10   concluded otherwise because the Trustee's counsel owed no duty to creditors.  This Court

11   agrees.  A trustee's counsel owes no fiduciary duty to creditors.  Wolf v. Kupetz (In re Wolf

12   & Vine, Inc.), 118 B.R. 761, 771 (Bankr. C.D. Cal. 1990).  Moreover, because no attorney-

13   client relationship exists between Virtue and the Trustee's counsel, Virtue lacks standing to

14   sue the Trustee's counsel for malpractice.  In California, legal malpractice claims cannot be

15   assigned.  Kracht v. Perrin, Gartland & Doyle, 219 Cal. App. 3d 1019, 1022–23, 268 Cal.

16   Rptr. 637 (1990).

17        Virtue concedes that "[i]n this case, only the Trustee has standing to sue herself and

18   to sue her counsel on behalf of the estate."  (Virtue Br. 28 (emphasis in original).)  However,

19   Virtue argues that courts have discretion to authorize creditors in a Chapter 11 case to sue on

20   behalf of the estate when a debtor in possession, or a trustee, is unwilling or economically

21   unable to do so.  See, e.g., Hansen v. Finn (In re Curry and Sorensen, Inc.), 57 B.R. 824, 828

22   (B.A.P. 9th Cir. 1986) (creditor may "petition the court to . . . gain court permission to

23   institute the action itself.").  By analogy, Virtue argues that the bankruptcy court should

24   have allowed him to sue the Trustee's counsel on behalf of the estate because the Trustee's

25   attorney-client agreement, and any claims against counsel arising out of it, are assets of the

26   estate.

27        However, the Trustee's attorneys' "attorney-client relationship only exists with the

28   trustee, so the trustee is the only one to whom a fiduciary duty is owed."  In re Bay Area

-13-

1  Material Handling, Inc., No. 95–01903, 1995 WL 747954, at *7 (N.D. Cal. Dec. 6, 1995);

2  11 U.S.C. § 327(a) (trustee may employee attorney to "represent or assist the <u>trustee</u> in

3  carrying out the trustee's duties under this title") (emphasis added).  The Trustee's counsel

4  are not the estate's counsel, and therefore owe no such duty to the estate.  <u>Id.</u>  Nor are the

5  Trustee's counsel also the Debtor's counsel, against whom the estate might have a claim if

6  the Debtor's counsel harmed the Debtor.  <u>See, e.g.</u>, <u>Smith v. Arthur Andersen, LLP</u>, 421

7  F.3d 989, 1002 (9th Cir. 2005) (noting that a trustee may sue debtor's officers and counsel

8  for malpractice for damages inflicted upon the debtor).  Virtue presents no authority to the

9  contrary.  Consequently, even if Virtue could bring a claim on behalf of the estate, the estate

10  appears to lack standing to bring a claim against the Trustee's counsel.  Therefore, the

11  bankruptcy court did not err in holding that Virtue could not sue the Trustee's counsel.

12        E.    <u>Virtue May Not Hire His Own Counsel on Behalf of the Estate</u>

13        Virtue asserts that, pursuant to 11 U.S.C. § 327(e), he should have been allowed to

14  hire his own counsel and receive pre-approval to be reimbursed from the estate.  However,

15  § 327(e) provides that a trustee, using administrative funds from the estate with court

16  approval, "may employ, for a specified special purpose, other than to represent the trustee in

17  conducting the case, an attorney that has represented the debtor[.]"  It provides no basis for a

18  creditor to hire an attorney on behalf of the estate.  Virtue argues that, because the Trustee

19  has a conflict of interest in suing herself and her counsel (she is represented by a law firm of

20  which she is a member), he should have been permitted to hire his own attorney to sue them,

21  and to be reimbursed from the estate.  However, § 327(e) does not support Virtue's position.

22  As the bankruptcy court noted, Virtue may use his own funds and attorneys to bring his

23  claims against the Trustee, and may later seek reimbursement pursuant to 11 U.S.C. §

24  503(b)(3)(D) for having made a substantial contribution to the estate.  (ER 2752.)

25        F.    <u>The Bankruptcy Court Properly Stayed the Action and Denied Discovery</u>

26        Virtue argues that the bankruptcy court erred in staying his action pending appeal.

27  Stays that do not involve a money judgment are discretionary, and "'[w]hen a bankruptcy

28  court has ruled on the issue of a stay of its order pending appeal, the district court, sitting as

1  an appellate court, reviews that decision for abuse of discretion.'"   In re Irwin, 338 B.R. at

2  844 (quoting Universal Life Church v. United States, 191 B.R. 433, 444 (E.D. Cal. 1995));

3  In re Wymer, 5 B.R. 802, 804 (9th Cir. BAP 1980) (same).  "'Discretion will be found to

4  have been abused when the judicial action is arbitrary, fanciful or unreasonable which is

5  another way of saying that discretion is abused only where no reasonable man would take

6  the view adopted by the trial court.'"   In re Irwin, 338 B.R. at 844 (quoting In re Blackwell,

7  162 B.R. 117, 119 (E.D. Pa. 1993)).

8         Under Federal Rule of Bankruptcy Procedure 8005, "the bankruptcy judge may

9  suspend or order the continuation of other proceedings in the case under the Code or make

10  any other appropriate order during the pendency of an appeal on such terms as will protect

11  the rights of all parties in interest."  As Virtue notes, the court in In re Irwin stated that

12  "'[a]n appellant seeking a discretionary stay pending appeal under Bankruptcy Rule 8005

13  must prove:  (1) appellant is likely to succeed on the merits of the appeal; (2) appellant will

14  suffer irreparable injury; (3) no substantial harm will come to appellee; and (4) the stay will

15  do no harm to the public interest.'"   In re Irwin, 338 B.R. at 843 (quoting Universal Life

16  Church, 191 B.R. at 444).  While the moving party has the burden of establishing these

17  elements, id., a bankruptcy court may also issue a stay sua sponte under Rule 8005, In re

18  Ewell, 958 F.2d 276, 279 (9th Cir. 1992).  Accordingly, the failure of the moving party to

19  meet its burden will not preclude a bankruptcy court from issuing a stay.  Moreover, some

20  authority suggests that the four factor test for a stay may not be appropriate in all

21  circumstances, and need not be applied rigidly.  In re Gleasman, 111 B.R. 595, 599–600

22  (Bankr. W.D. Tex. 1990).  Bankruptcy courts should primarily consider the administration

23  of the bankruptcy case.  Id. at 599.

24         Here, the bankruptcy court noted that Ninth Circuit law is unsettled as to the

25  Trustee's quasi-judicial immunity, but that the Trustee at least has a colorable chance of

26  prevailing.  (ER 3062.)  It also found that, without a stay, the Trustee would be harmed by

27  the cost of litigating claims that may turn out to be non-cognizable as a matter of law.  (ER

28  3063.)  While litigation costs may not constitute irreparable harm, Renegotiation Bd. v.

-15-

1  Bannercraft Clothing Co., 415 U.S. 1, 24, 94 S. Ct. 1028, 1040, 39 L. Ed. 2d 123 (1974), the

2  bankruptcy court found that allowing Virtue's case to proceed would alter the status quo and

3  harm administration of the bankruptcy case.  (ER 3063.)  Moreover, the litigation costs

4  would not be borne by the Trustee alone, but would also lead to diminution of the estate and

5  adversely affect distribution to other creditors.  (ER 3063.)  The bankruptcy court also found

6  that Virtue would not be harmed by the stay because there is no danger of destruction of

7  evidence since the Trustee is an officer of the court and is obligated to retain such evidence.

8  (ER 3063.)  Finally, the bankruptcy court found that a stay was in the public interest because

9  "going forward with the merits of the case while an appeal is pending on the very question

10  of what is actionable . . . would be a serious waste of time, money, and judicial resources.

11  Therefore, granting a stay pending appeal will best preserve the status quo and serve to

12  prevent irremediable harm to the trustee and to the estate[.]"  (ER 3064.)  The Court

13  concludes that a "reasonable man [c]ould take the view adopted by the [bankruptcy court]."

14  In re Irwin, 338 B.R. at 844.  Therefore, the bankruptcy court did not abuse its discretion in

15  issuing the stay.

16          Relatedly, the bankruptcy court denied Virtue's request to conduct discovery pending

17  appeal.  (ER 3064–3065.)  It found that, because there is little risk of evidence being lost or

18  destroyed, but there is a significant risk that some of the claims for which Virtue hopes to

19  conduct discovery will fail as a matter of law, it was unnecessary to proceed with discovery,

20  though the parties could agree to do so if desired.  (ER 3065.)  The bankruptcy court did not

21  abuse its discretion in reaching that decision.

22          G.      The Bankruptcy Court Properly Held That the Trustee Need Not Post a Bond

23          The bankruptcy court also denied Virtue's request that the Trustee post a bond as a

24  condition of the stay.  (ER 3064.)  A bankruptcy court issuing a stay under Rule 8005 need

25  not require the posting of a bond, In re Byrd, 172 B.R. 970, 974 (Bankr. W.D. Wash. 1994),

26  and its decision whether or not to require a bond is reviewed for abuse of discretion, In re

27  Swift Aire Lines, Inc., 21 B.R. at 14–16 (stating that court abuses its discretion when

28  refusing to approve supersedeas bond when stay as a matter of right exists for appeal from

-16-

1  money judgment, but implying that bonds in other cases are discretionary).  Here, the

2  bankruptcy court denied Virtue's request that the Trustee post a bond because the Trustee is

3  already bonded and there is no indication that a future judgment would be uncollectible.

4  (ER 3064.)  The Court finds that the bankruptcy court did not abuse its discretion in denying

5  Virtue's request that the Trustee post a bond.

6         H.    The Bankruptcy Court Properly Denied Virtue's Motion for Reconsideration

7         Virtue sought to have the bankruptcy court modify its December 12, 2007 Order to

8  allow Virtue to file his complaint alleging all claims, including negligence, thus forcing the

9  Trustee to file a motion to dismiss.  (ER 2774–3834.)  The bankruptcy court construed this

10  as a motion for reconsideration, and denied it as an impermissible attempt to change the

11  procedural posture of the case.  (ER 3065.)  The Trustee argues that Virtue's motion to

12  modify simply reiterated the same argument he presented in his motion for leave to file a

13  complaint, which the bankruptcy court rejected in its December 12, 2007 Order.  Virtue

14  therefore provided no new basis for the bankruptcy court to reconsider or modify its order.

15  (Trustee Br. 30.)  Virtue does not address this issue in his briefing.  Accordingly, the

16  bankruptcy court's decision on this issue is affirmed.

17                    **CONCLUSION**

18         For all the foregoing reasons, the bankruptcy court's December 12, 2007 and January

19  31, 2008 Orders are affirmed.

20   DATED:  August 21, 2009

21

22

23                                  Percy Anderson
                          UNITED STATES DISTRICT JUDGE

24

25

26

27

28